IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SUSAN MCKNIGHT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 16-cv-2534-JPM-tmp |
| v. | ) | |
| | ) | |
| UNITED INDUSTRIES CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

ORDER CONCERNING DEFENDANT'S MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

Before the Court is Defendant United Industries Corporation ("United")'s Motion to
Dismiss for Lack of Personal Jurisdiction and to Dismiss Plaintiff's Indirect and Willful
Infringement Claims, filed February 13, 2017. (ECF No. 24.) Plaintiff Susan McKnight, Inc.
("McKnight") filed a response in opposition on March 13, 2017. (ECF No. 29.) Defendant
filed a reply on March 27, 2017. (ECF No. 31.)

For the reasons stated below, the Court GRANTS in part and DENIES in part
Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and to Dismiss Plaintiff's
Indirect and Willful Infringement Claims (ECF No. 24).

I.    BACKGROUND

A.    Factual Background

On February 9, 2016, U.S. Patent No. 9,253,973, entitled "Crawling Arthropod
Intercepting Device and Method ("the '973 Patent"), was issued to Plaintiff Susan McKnight,

Inc, a Tennessee corporation with its principal place of business in Tennessee, and Purdue

Research Foundation.  (Am. Compl., ECF No. 13 ¶¶ 1, 8.)  Plaintiff is the owner of the '973

Patent by assignment from Purdue Research Foundation.  (Id. ¶ 10.)

The '973 Patent covers a bed bug intercepting device, placed in proximity to an object

where bed bugs travel (e.g., furniture).  The device is upstanding, with an exterior that bed

bugs can climb, along with two pitfall traps.  The first trap is bait-free and slippery, bound to

the furniture or object by an inner support leg.  The second trap consists of outer and inner

receptacles.  The inner receptacle traps bed bugs traveling away from the object or furniture,

and outer receptacle traps bed bugs traveling towards the object or furniture.  ('973 Patent,

ECF No. 13-2, col. 11, ll. 17-39 (claim 1); see also id. col. 16, ll. 25-48 (claim 16)).

On June 30, 2015, U.S. Patent No. 9,066,511, entitled "Crawling Arthropod

Intercepting Device and Method" ("the '511 Patent"), was issued to Plaintiff and Purdue

Research Foundation.  (Id. ¶ 6.)  The '511 Patent describes the method of catching bed bugs

with a device having a liquid-free inner and outer receptacle, by placing the device on the

floor under a bed, sofa, or chair.  ('511 Patent, ECF No. 13-1 col. 11-12.)

Defendant United Industries Corporation ("United"), a Delaware corporation with its

principal place of business in Missouri, sells and distributes through others in Tennessee and

throughout United States bed bug traps called Hot Shot Bed Bug Interceptors.  (Id. ¶¶ 2, 13.)

The Hot Shot Bed Bug Interceptor utilizes a pitfall trap in a box, which is placed under the

desired furniture or object to trap bed bugs.  (Id. ¶ 14.)

On June 30, 2016, Plaintiff sent Defendant a cease and desist letter.  (Id. ¶ 16.)  On

July 11, 2016, Scott Piering responded to the letter, stating that Spectrum Brands (of which

Defendant is a part) would respond after review of the matter.  (Id. ¶ 17.)

### B.    Procedural Background

On June 30, 2016, Plaintiff filed its Complaint in this action.  (ECF No. 1.)  Plaintiff

alleged that Defendant's Hot Shot Bed Bug Interceptors infringed the '973 Patent, at least as

to Claims 1 and 16.  (Id. ¶ 13.)  Plaintiff sought relief pursuant to 35 U.S.C. §§ 283-85.  (Id. at

PageIDs 4-5.)

On October 17, 2016, the parties filed a Joint Motion for Extension of Time for United

Industries Corporation to Answer or Otherwise Respond to Complaint and Memorandum in

Support thereof.  (ECF No. 9.)  On October 18, 2016, the Court granted the motion for

extension, providing Defendant until December 16, 2016 to file its answer or otherwise

respond to the Complaint.  (ECF No. 10.)

On December 13, 2016, Plaintiff filed an Amended Complaint alleging Defendant

directly, indirectly, and willfully infringed the both the '973 and '511 Patents.  (ECF No. 13.)

Plaintiff's Amended Complaint further alleges that even after sending its cease and desist

letter, and receiving a response, Defendant continues to infringe the two patents at issue.  (Id.

¶ 19.)  The Amended Complaint seeks relief pursuant to 35 U.S.C. §§ 271, 283, 284, and 285.

(Id. at PageIDs 46-47.)

On February 13, 2017, Defendant filed three motions: (1) Motion to Dismiss for

Improper Venue (ECF No. 22); (2) Motion to Stay Pending the United States Supreme

Court's Decision in the TC Heartland Case (ECF No. 23); and (3) Motion to Dismiss for Lack

of Personal Jurisdiction and to Dismiss Plaintiff's Indirect and Willful Infringement Claims
(ECF No. 24).  On March 13, 2017, Plaintiff filed timely responses in opposition to
Defendant's three motions.  (ECF Nos. 27-29.)   On March 27, 2017, Defendant filed timely
replies to its motions to dismiss.  (ECF Nos. 30-31.)

On April 14, 2017, the Court entered an Order Denying Defendant's Motion to
Dismiss and Order Denying Defendant's Motion to Stay.  (ECF No. 32.)  The Court
specifically denied Defendant's Motion to Dismiss for Improper Venue (ECF No. 22).  (Id. at
PageID 565.)

On May 26, 2017, following the Supreme Court's May 22, 2017 ruling in TC
Heartland LLC v. Kraft Foods Grp. Brands, LLC, No. 16-341, 137 S.Ct. 1514 (2017),
Defendant filed a Motion to Reconsider its Motion to Dismiss for Improper Venue and
Motion to Stay.  (ECF No. 35.)  Plaintiff filed its response in opposition on June 15, 2017.
(ECF No. 39.)  On May 31, 2017, Defendant filed a "Consent Motion [to] Stay[] All
Proceedings Pending the Court's Disposition of Motion to Reconsider Defendant's Motion to
Dismiss for Improper Venue."  (ECF No. 36.)

On June 15, 2017, the Court granted the motion to stay proceedings (ECF No. 37), and
on July 7, 2017, granted the motion to reconsider (ECF No. 40).  The Court's Order Granting
Defendant's Motion for Reconsideration and Order for Supplemental Briefing on Venue
further required the parties submit supplemental briefing on the issue of venue following the
Supreme Court's recent decision.  (ECF No. 40 at PageIDs 605-06.)

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  As such, a Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)).  A motion to dismiss only tests whether the plaintiff has pleaded a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F.Supp.2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If a court decides in light of its judicial experience and common sense that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679.  The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555).  A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  A complaint need not contain detailed factual allegations.  However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  When deciding a 12(b)(6) motion to dismiss, the court may look to "matters of public record, orders, items

5

appearing in the record of the case and exhibits attached to the complaint" for guidance.
Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008) (quoting Amini v. Oberlin Coll.,
259 F.3d 493, 502 (6th Cir. 2001)).

**B.    Motion to Dismiss for Lack of Personal Jurisdiction**

The court must have personal jurisdiction over each asserted claim.  SunCoke Energy
Inc. v. MAN Ferrostaal Aktiengesellschaft, 563 F.3d 211, 220 (6th Cir. 2009) (White, J.,
concurring) ("[P]ersonal jurisdiction must be proper as to each claim. . . .").  A federal court
looks to the state long-arm statute in which it sits to determine the appropriate limitations on
personal jurisdiction, then assesses the exercise of jurisdiction, if any, under due process
requirements.  Federal Rule of Civil Procedure 4(k)(1)(a); see Aristech Chem. Int'l Ltd. v.
Acrylic Fabricators, Ltd., 138 F.3d 624, 627 (6th Cir. 1998); CompuServe, Inc. v. Patterson,
89 F.3d 1257, 1262 (6th Cir. 1996); Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002).  The
jurisdictional limits of Tennessee law and of the federal constitutional law of due process are
identical.  Intera Corp. v. Henderson, 428 F.3d 605, 616 (6th Cir. 2005); First Cmty. Bank,
N.A. v. First Tennessee Bank, N.A., 489 S.W.3d 369, 384 (Tenn. 2015), cert. denied sub nom.
Fitch Ratings, Inc. v. First Cmty. Bank, N.A., 136 S. Ct. 2511, 195 L. Ed. 2d 841 (2016);
Tenn. Code Ann. § 20-2-223(a).[1]  Thus, the Court need only determine whether exercising
personal jurisdiction over the defendant is consistent with federal due process requirements.

---

[1] Tenn. Code Ann. § 20-2-223(a) states in pertinent part:
(a) A court may exercise personal jurisdiction over a person, who acts directly or indirectly, as
to a claim for relief *arising from* the person's:
(1) Transacting any business in this state;
(2) Contracting to supply services or things in this state;
(3) Causing tortious injury by an act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state of the
person who regularly does or solicits business, or engages in any other persistent
course of conduct, or derives substantial revenue from goods used or consumed or
services rendered, in this state;
 . . . .
Tenn. Code Ann. § 20-2-223(a) (emphasis added).

6

Bridgeport Music, Inc. v. Still N The Water Pub., 327 F.3d 472, 477 (6th Cir. 2003).  The due

process clause requires that a non-resident defendant have at least "certain minimum contacts

with the [forum state] such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'"  Youn v. Track, Inc., 324 F.3d 409, 417 (6th Cir.

2003) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

   "There are two kinds of personal jurisdiction within the Federal Due Process inquiry:

(1) general personal jurisdiction, where the suit does not arise from defendant's contacts with

the forum state; and (2) specific jurisdiction, where the suit does arise from the defendant's

contacts with the forum state."  Conn v. Zakharov, 667 F.3d 705, 712–13 (6th Cir. 2012).

General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of

the connection (or lack thereof) between the claim and the forum.  Maxitrate Tratamento

Termico E Controles v. Super Sys., Inc., 617 F. App'x 406, 408 (6th Cir. 2015), cert. denied

sub nom. Maxitrate Tratamento Termico E Controles v. Allianz Seguros S.A., 136 S. Ct. 336

(2015) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 769 (2014)).  Specific jurisdiction, by

contrast, "exposes the defendant to suit in the forum state only on claims that arise out of or

relate to a defendant's contacts with the forum."  Kerry Steel, Inc. v. Paragon Indus., Inc., 106

F.3d 147, 149 (6th Cir. 1997).  That is, when alleged contacts fall short of being "continuous

and systematic," those contacts may still support the exercise of specific jurisdiction if they

relate to the cause of action.  The Sixth Circuit Court of Appeals has set out a three-part test

for determining when specific jurisdiction exists:

> First, the defendant must purposefully avail [himself] of the privilege of acting
> in the forum state or causing a consequence in the forum state.  Second, the
> cause of action must arise from the defendant's activities there.  Finally, the
> acts of the defendant or consequences caused by the defendant must have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. Mach. Co. v. Mohasco, 401 F.2d 374, 381 (6th Cir. 1968);[2] see also Harmer v. Colom, 650 F. App'x 267, 272 (6th Cir. 2016).  The Court of Appeals for the Federal Circuit employs the same three-part test in the patent context.  AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1361 (Fed. Cir. 2012).

When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), "[t]he plaintiff bears the burden of making a prima facie showing of the court's personal jurisdiction over the defendant."  Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005).  A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [a defendant] and the forum state to support jurisdiction.'"  Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (quoting Provident Nat'l Bank v. Cal. Fed. Sav. Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987)).

When the court does not conduct an evidentiary hearing on the issue of personal jurisdiction, it must "not consider the facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to the nonmoving party."  Id. (citation omitted); Polar Electro Oy v. Suunto Oy, 829 F.3d 1343, 1348 (Fed. Cir. 2016).

---

[2] Since the Sixth Circuit espoused this test, the Tennessee Long Arm Statute changed "from a 'single act' statute [in which jurisdiction was assumed only over causes of action arising out of the defendant's activities in the state] to a 'minimum contacts' statute which expanded the jurisdiction of Tennessee courts to the full limit allowed by due process."  UPS v. Buck Fever Racing, Inc., No. 03A01-9609-CH-00288, 1996 WL 739296, at *2 (Tenn. Ct. App. Dec. 24, 1996).  Nonetheless, the three-part test is "to be considered in determining whether the requisite minimum contacts [are] present. . . ."  Id.

### C.    Willful Infringement

To be liable for willful infringement pursuant to 35 U.S.C. § 284, the infringing

conduct must be "willful, wanton, malicious, [in] bad-faith, deliberate, consciously wrongful

[or] flagrant." Halo Elecs., Inc. v. Pulse Elecs., Inc., 136 S.Ct. 1923, 1932 (2016).  Mere

conclusory allegations of knowledge and infringement are not enough to plausibly allege the

level of "egregious[ness]" required under Halo.  Cf. Halo, 136 S. Ct. at 1936 ("[T]he Court's

references to 'willful misconduct' do not mean that a court may award enhanced damages

simply because the evidence shows that the infringer knew about the patent and nothing

more.") (Breyer, J., concurring).  In other words, the plaintiff must allege some "egregious . . .

misconduct," id. at 1935, occurring before the initial claim of infringement was filed,

otherwise her remedy will likely be limited to a preliminary injunction.  See 35 U.S.C. § 283;

Fed. R. Civ. P. 8; Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.

Cir. 2001).

### D.    Induced Infringement

Pursuant to 35 U.S.C. § 271(b), [w]hoever actively induces infringement of a patent shall be liable as an infringer.  Importantly, liability for induced infringement under § 271(b) must be predicated on direct infringement.  The patentee must also show that the alleged infringer possessed the requisite intent to induce infringement, which we have held requires that the alleged infringer knew or should have known his actions would induce actual infringements.

Eli Lilly & Co. v. Teva Parenteral Medicines, Inc., 845 F.3d 1357, 1363–64 (Fed. Cir. 2017)

(internal citations and quotation marks omitted).  "Mere 'knowledge of the acts alleged to

constitute infringement' is not sufficient."  Id. at 1368  (quoting DSU Med. Corp. v. JMS Co.,

471 F.3d 1293, 1305 (Fed. Cir. 2006)).  In establishing the predicated direct infringement, a

patentee need not present direct evidence of infringement, because a finding that the accused

9

device contains all the limitations of the asserted claims may be done with direct or

circumstantial evidence.  02 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd., 449 Fed.

Appx 923, 928 (Fed. Cir. 2011) (citing Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301,

1318 (Fed. Cir. 2009); Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1293

(Fed. Cir. 2008)); Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1364

(Fed. Cir. 2004) (holding that circumstantial evidence was sufficient to show that a method

step was carried out by the direct infringer, even in the absence of direct evidence for direct

infringer).  For example, "use of instruction manuals [may be used] to demonstrate direct

infringement by customers in the context of induced infringement." Tinnus Enterprises, LLC

v. Telebrands Corp., 846 F.3d 1190, 1204 (Fed. Cir. 2017) (citing Golden Blount, Inc. v.

Robert H. Peterson Co., 438 F.3d 1354, 1362–63 (Fed. Cir. 2006)).  Notably, however, "[a]

seller does not induce infringement of a method claim by merely selling an apparatus capable

of performing the method." ePlus, Inc. v. Lawson Software, Inc., 789 F.3d 1349, 1360 (Fed.

Cir. 2015), cert. denied, 136 S. Ct. 1166, 194 L. Ed. 2d 177 (2016).

### E.    Contributory Infringement

> Contributory infringement occurs if a party sells, or offers to sell, a
> material or apparatus for use in practicing a patented process, and that
> "material or apparatus" is material to practicing the invention, it has no
> substantial non-infringing uses, and it is known by the party "to be especially
> made or especially adapted for use in an infringement of such patent."

Cleveland Clinic Found. v. True Health Diagnostics LLC, No. 2016-1766, 2017 WL 2603137,

at *9 (Fed. Cir. June 16, 2017) (quoting 35 U.S.C. § 271(c)). Like induced infringement, there

can be no contributory infringement without an underlying act of direct infringement.  In re

Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1333 (Fed. Cir.

2012).  Moreover, the defendant "must know 'that the combination for which his component

was especially designed was both patented and infringing.'" Global–Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 766 (2011).

"[C]ontributory infringement can be based on an offer to sell a product for use in practicing a patented method. . . ." Id. For example, a product, or component of a product, that is "specially adapted for use in the patented process and with no substantial non-infringing use, would plainly be 'good for nothing else' but infringement," making its seller liable. Ricoh Co. v. Quanta Computer, Inc., 550 F.3d 1325, 1337 (Fed. Cir. 2008) (quoting Metro-Goldwyn-Mayer Studios Inc. v. Grokster, 545 U.S. 913, 932 (2005)). A substantial non-infringing use is one that is not unusual, occasional, or aberrant. In re Bill of Lading, 681 F.3d at 1337 (citing Vita–Mix Corp. v. Basic Holdings, Inc., 581 F.3d 1317, 1327–29 (Fed. Cir. 2009)).

III.    ANALYSIS

A.    Waiver

As a threshold matter, the Court addresses Plaintiff's contention that Defendant waived its objection to personal jurisdiction by filing two separate motions to dismiss on the same day, one challenging venue and the other challenging personal jurisdiction. (ECF No. 29 at PageID 452.) Both objections are considered waivable under the Federal Rules of Civil Procedure. Waiver further requires voluntary relinquishment. Fed. R. Civ. P. 12(h), 12(g)(2). In the instant matter, Defendant's first motion to dismiss challenging venue explicitly references and thereby preserves its subsequently filed motion to dismiss for lack of personal jurisdiction. (ECF No. 22-1 at PageID 117 ("However, as described in detail in United's Motion to Dismiss (No. 2), the lack of personal jurisdiction . . . .").) The Court finds that this

11

explicit reference saves Defendant from waiver.  Cf. WAIVER, Black's Law Dictionary (10th

ed. 2014) ("The voluntary relinquishment or abandonment — express or implied — of a legal

right or advantage.").  The Court, therefore, addresses the merit of the parties' argument

regarding personal jurisdiction.

### B.    Failure to State a Claim: Willful Infringement

In its motion to dismiss, Defendant argues that Plaintiff has failed to state a claim for

willful infringement because Plaintiff has failed to allege facts that Defendant's behavior rises

to the level of "willful misconduct."  (ECF No. 24-1 at PageID 240.)  The Court agrees.  On

review of Plaintiff Complaint, there is little more than conclusory allegations of knowledge

and infringement (ECF No. 13 ¶¶ 19, 27), which are not enough to plausibly allege the level

of "egregious[ness]" required under Halo.  Cf. Halo, 136 S. Ct. at 1936 (Breyer, J.,

concurring).  Nor has Plaintiff alleged any factual "egregious . . . misconduct" that occurred

before the initial claim of infringement was filed.  Halo, 136 S. Ct. at 1935.  Accordingly, the

Court GRANTS Defendant's Motion to Dismiss Plaintiff's willful infringement claims for

failure to state a claim.

### C.    Failure to State a Claim and Personal Jurisdiction: Indirect Infringement

Defendant contends there is no specific jurisdiction over it for Plaintiff's indirect

infringement claims based on the '511 Patent's method claims.  (ECF No. 24-1 at PageIDs

242-45.)[3]  Defendant specifically argues that Plaintiff "has not identified a single sale of the

accused instrumentality in this District," and thus, without sufficient allegation of direct

---

[3] There appears to be no dispute that there is no general jurisdiction over Defendant.  Regardless, the
Court need not address the issue of general jurisdiction here because it finds it has specific jurisdiction over
Defendant.

infringement, "the long-arm statute provides no basis for jurisdiction in this District. . . ."  (Id.

at PageID 246.)  Defendant also asserts that it

> lacks sufficient minimum contacts with Tennessee . . . [because it] does not
> purposefully direct any activities at the forum's residents in the form of direct
> shipments of the accused instrumentality to purchasers in this District . . . [and
> although it] maintains a general interactive website for marketing and
> disseminating information about its products[,] . . . [the] website is not directed
> at consumers in any particular state, including consumers in Tennessee.

(Id. at PageID 247.)

Defendant further contends that third-party sales of the accused products do not afford

this Court specific jurisdiction over it because

> the accused instrumentalities are sold to and shipped by United to third party
> retailers for their brick-and-mortar stores and a central fulfillment center for
> website orders at locations in other states or districts.  United does not
> physically fulfill orders, prepare and package ordered product, or handle
> shipping to purchasers from the third party retailers into this District.

(Id. at PageID 248.)  Thus, Defendant avers that it does not purposefully direct the accused

products into this district.  (Id.)

Plaintiff argues that Defendant is subject to personal jurisdiction in this district

because the accused products are sold in this district by Defendant's third-party retailers, with

whom Defendant contracts.  (See ECF No. 29-2; ECF No. 29 at PageID 457.)  Additionally,

Plaintiff highlights that Defendant's website directs customers to stores that sell the accused

products in this district.  (See ECF No. 29-3.)  Moreover, the directions for use of the accused

products state:

> (1) Place one interceptor under each leg.  Leg should be securely placed in
> center of interceptors. . . .
>
> (2) Bed bugs will travel down furniture or bed frame legs into the inner well of
> the interceptors, unable to climb out. . . .

13

(ECF No. 24-2.)  The Court notes that these instructions arguably parallel the '511 Patent's method claims.[4]

In the indirect infringement context, federal courts have found that third-party sales can afford specific jurisdiction over an alleged patent infringer.[5]  These courts often rely on the stream-of-commerce theory, which allows a court in a patent case to exercise specific jurisdiction over an out-of-state actor who "purposefully shipped" the allegedly infringing item into the forum state "through an established distribution channel."  Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1565 (Fed. Cir. 1994).  In contrast, in non-patent

---

[4] Claim 1 of the '511 Patent states in relevant part:

> A method of intercepting bed bugs between a leg of a [piece of furniture] and a floor, comprising placing a bed bug intercepting device on the floor under the leg of the [piece of furniture] with a lower end of the leg received on a bottom wall of an inner most receptacle to provide a path for bed bugs departing from the [piece of furniture] . . . wherein the innermost receptacle . . . is slippery to prevent bed bugs from climbing out of the innermost receptacle . . . .

('511 Patent, ECF No. 13-1, col. 11, ll. 13-21) (alternation is for brevity and do not serve as a binding construction of the patent-in-suit's claims).

[5] See Graphics Properties Holdings, Inc. v. ASUS Computer Int'l, 70 F. Supp. 3d 654, 665 (D. Del. 2014) (discussing that Delaware's long-arm statute's "arising from" language merely required that the defendant's acts set in motion the events forming the basis for the action, and thus a foreign defendant purposefully availed itself when its third-party retailer sold the accused products in Best Buy stores in Delaware); Robert Bosch LLC v. Alberee Products, Inc., 70 F. Supp. 3d 665, 678 (D. Del. 2014) (holding that a defendant had "target[ed] the Delaware market" by "sell[ing] the accused product to the nationwide reseller Costco with the expectation that Costco will sell the accused product in all parts of the United States, including Delaware"); cf. Ingeniador, LLC v. Interwoven, 874 F. Supp. 2d 56, 63 (D.P.R. 2012) (holding that California defendant's use of resellers did not afford the court specific jurisdiction because plaintiff failed to allege the resellers sold any of the infringing products in the relevant district);  Orbit Irrigation Prod., Inc. v. Melnor, Inc., No. 1:16-CV-137, 2017 WL 1274043, at *3-4 (D. Utah Apr. 4, 2017) (finding the court could exercise personal jurisdiction over the accused infringer, a Delaware corporation headquartered in Virginia, under the stream of commerce theory based on the accused infringer distributing the accused products to nationwide retailers, such as Lowes, Home Depot and Amazon.com, which in turn sold the accused product over their websites and shipped the products into the forum); Acushnet Company v. Zimventures, LLC, 2015 WL 9460557, *5-6 (D. Mass. 2015) (finding that by using a distribution channel set up through third party websites to sell the accused products in the forum these accused infringers had purposefully availed themselves to do business in the forum and therefore were subject to specific personal jurisdiction); Deckers Outdoor Corporation v. Reed Sportswear Manufacturing Co., 2015 WL 5167466, *2-3 (C.D. Cal. 2015) (ruling that small out-of-state business's sale of accused products through Amazon.com to residents of the forum was sufficient to establish specific personal jurisdiction); Renfrow v. BDP Innovative Chemicals Co., 2014 WL 7146792, *2-*4 (D. Ariz. 2014) (finding that accused infringer's use of distributor to sell the accused products in the forum supported specific personal jurisdiction under the stream of commerce theory, further denying motion to transfer where patentee resided in the forum); see also Schwanger v. Munchkin, Inc., 217 F.3d 854, 1999 WL 820449, *6 (Fed. Cir. 1999) (nonprecedential) ("[T]he allegations here are that [defendant] purposefully shipped the accused product into Ohio through Wal-Mart, an established distribution channel.  The cause of action for patent infringement is alleged to arise out of these activities.  No more is required to establish the purposeful minimum contacts necessary for personal jurisdiction. . . .").

Tennessee cases, a third-party sale is unlikely to afford the court specific jurisdiction over the

defendant.[6]  Because the instant action exclusively concerns federal patent laws rather than

Tennessee law, the Court finds Defendant's reliance on Tennessee authority unpersuasive.

(See ECF No. 31 at PageID 554 (citing State v. NV Sumatra Tobacco Trading Co., 403

S.W.3d 726 (Tenn. 2013)).  Consequently, the Court's determination relies on federal

authority.  Trintec Indus., Inc. v. Pedre Promotional Prods., Inc., 395 F.3d 1275, 1279 (Fed.

Cir. 2005).  The Court thus turns to the three-part, specific jurisdiction test: (1) purposeful

availment, (2) arising out of or relates to infringing activity, and (3) reasonableness and

fairness of personal jurisdiction.  AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358,

1361 (Fed. Cir. 2012).

### A.    Purposeful Availment

Plaintiff advances the "stream-of-commerce" specific personal jurisdiction theory.

(ECF No. 29 at PageID 456.)  Under the stream-of-commerce theory, courts assessing patent

infringement find a defendant has purposefully availed itself of the forum when there has been

an actual sale of the accused product in the forum through an established distribution channel.

See, e.g., Schwanger v. Munchkin, Inc., 217 F.3d 854, 1999 WL 820449, *6 (Fed. Cir. 1999)

(nonprecedential); Orbit Irrigation Prod., Inc. v. Melnor, Inc., No. 1:16-CV-137, 2017 WL

---

[6] See, e.g., Davis Kidd Booksellers v. Day–Impex, 832 S.W.2d at 574 (finding lack of personal
jurisdiction over a British manufacturer of sprinkler bulbs and its Pennsylvania distributor for sales made in
Tennessee because neither had "purposely directed" their activities to the forum as neither had ever sold glass
bulbs to anyone in Tennessee, "advertised, solicited orders, or maintained an office or employees in Tennessee,"
had employees that traveled to Tennessee to solicit business, nor had control of marketing or knew the identity of
customers in Tennessee); Mullins v. Harley–Davidson Yamaha BMW of Memphis, Inc. (finding no specific
jurisdiction over South Korean helmet manufacturer for wrongful death suit where its Massachusetts distributor
sold helmets to Tennessee retailer, because the manufacturer maintained no offices, places of business, property,
or agents in Tennessee, sold its helmets directly to distributors who were free to sell to any dealer in the United
States, did not sell helmets directly to Tennessee, transacted no business in Tennessee, did not create or control
distribution system, did not advertise, pay for advertising, or solicit business in Tennessee, and because
manufacturer was never aware to whom its helmets were ultimately sold or to whom they were sent in the United
States); State v. NV Sumatra Tobacco Trading Co., 403 S.W.3d 726, 763 (Tenn. 2013).

1274043, at *3-4 (D. Utah Apr. 4, 2017); Acushnet Company v. Zimventures, LLC, 2015 WL

9460557, *5-6 (D. Mass. 2015).  But the exact requirements of the stream-of-commerce

theory are debated and unclear, as set out in the Supreme Court's decision Asahi Metal Indus.

Co. v. Superior Court, 480 U.S. 102 (1987).  Beverly Hills Fan Co. v. Royal Sovereign Corp.,

21 F.3d 1558 (Fed. Cir. 1994).  What remains unanswered is "whether mere placement into

the stream of commerce is sufficient to establish jurisdiction, or whether intent that the

products reach the forum is required."  Celgard, LLC v. SK Innovation Co., 792 F.3d 1373,

1381 (Fed. Cir. 2015) (summarizing the plurality and differing opinions in Asahi).  In Ashai,

Justice O'Connor, along with four other justices, would require "more than the mere act of

placing a product in the stream of commerce" such as "'an action of the defendant

purposefully directed toward the forum State.'"  480 U.S. at 112.  For another four justices, as

expressed by Justice Brennan, a showing of "additional conduct" is not needed when the

stream of commerce involves "the regular and anticipated flow of products from manufacture

to distribution to retail sale," as opposed to an "unpredictable current[ ] or edd[y]."  Id. at 117.

The Federal Circuit has not yet decided which test applies in the patent context.  Beverly Hills

Fan, 21 F.3d at 1566.

Nevertheless, lower courts addressing patent issues have found that when a defendant

utilizes third-party distributors—like Home Depot and Amazon—who sell the accused

product into a forum, the defendant has purposefully availed itself by "intentionally and

regularly distributing its products through established nationwide distribution channels," and

thereby satisfies both Justice O'Connor's "additional conduct" test and Justice Brennan's

foreseeability test.  Orbit Irrigation Prod., Inc. v. Melnor, Inc., No. 1:16-CV-137, 2017 WL

1274043, at *3 (D. Utah Apr. 4, 2017); see, e.g., Acushnet Co. v. Zimventures, LLC, 155 F.

16

Supp. 3d 97, 104 (D. Mass. 2015); <u>Lambeth Magnetic Structures, LLC v. Toshiba Corp.</u>, No.

CV 14-1526, 2017 WL 782892, at *4 (W.D. Pa. Mar. 1, 2017).

This Court aligns itself with the reasoning of its sister courts. Accordingly, the Court

finds that taking as true that Lowe's is one of Defendant's authorized retailers who sells

allegedly infringing products to consumers across the United States, including Tennessee (<u>see</u>

ECF No. 29-2; ECF No. 29 at PageID 457; ECF No. 31 at PageID 549), and considering

Plaintiff's claim that it purchased the accused products in this district (Dec. Nicholas L.

Vescovo, Counsel for Plaintiff, ECF No. 29-2 ¶¶ 6), there are sufficient grounds on which to

conclude that Defendant purposefully availed itself of the privilege of doing business in

Tennessee. Even if "additional conduct" beyond a nationwide distribution channel was

required, the Court finds that Defendant's website, which directs customers to stores that sell

the accused products in this district (<u>see</u> ECF No. 29-3), may constitute "additional conduct,"

if only because it demonstrates that Defendant intended not just to sell to third-party retailers

for them to resell, but to specifically encourage its customers in Tennessee to access its

website to find and purchase Defendant's products in Tennessee. The Court therefore finds

Defendant purposefully availed itself of this forum.

### B. Arises Out Of Or Relates To

"In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is

that some act of making, using, offering to sell, selling, or importing products or services by

the defendant constitutes an infringement of the presumptively valid patent named in suit."

<u>Avocent Huntsville Corp. v. Aten Int'l Co.</u>, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (citing 35

U.S.C. § 271(a)). Consequently, for specific jurisdiction purposes, a claim typically arises out

of or relates to the infringing activity.  See id. (holding in an ordinary patent infringement suit, "the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention.")

In the instant action, Plaintiff's claim is that Defendant's product is indirectly infringing its valid patents.  Plaintiff specifically alleges that Defendant is liable for induced infringement and contributory infringement of its valid method claims.  (ECF No. 13 ¶ 18.) Defendant challenges both the induced and contributory infringement allegations because Plaintiff failed to sufficiently plead the prerequisite direct infringement of the '511 Patent method claims.  (ECF No. 31 at PageID 550, 554; ECF No. 24-1 at PageIDs 233-34.)  This argument challenges the sufficiency of Plaintiff's pleading for these claims.  The Court thus first addresses whether Plaintiff has made a *prima facie* showing of these claims to overcome Defendant's 12(b)(6) challenge, then addresses whether  these claims arise from Defendant's contacts within the forum to overcome Defendant's 12(b)(2) challenge.

The Court first finds Plaintiff has made a *prima facie* showing of induced infringement.  The Complaint sufficiently pleads and the evidence adequately suggests that there is an underlying direct infringement and that Defendant likely knew and intended the use of the accused products would infringe Plaintiff's '511 Patent.  See Cleveland Clinic Found. v. True Health Diagnostics LLC, No. 2016-1766, 2017 WL 2603137, at *9 (Fed. Cir. June 16, 2017).  An underlying basis for direct infringement is established by Plaintiff's allegations that third-party retailers resell Defendant's allegedly infringing product into Tennessee.  Although the retailers "do[] not induce infringement of [Plaintiff's] method claim by merely selling an apparatus capable of performing the method" ePlus, Inc., 789 F.3d at 1360 (Fed. Cir. 2015), the sale of the accused product together with Defendant's "instruction

18

manuals [sufficiently] demonstrate direct infringement by customers in the context of induced infringement." Tinnus Enterprises, LLC v. Telebrands Corp., 846 F.3d 1190, 1204 (Fed. Cir. 2017) (citing Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1362–63 (Fed. Cir. 2006)). These same instruction manuals sufficiently establish that Defendant intended to induce infringement of Plaintiff's method claims. See PolyVision Corp. v. Smart Techs. Inc., 501 F. Supp. 2d 1068, 1092 (W.D. Mich. 2007); M2M Sols. LLC v. Telit Commc'ns PLC, No. CV 14-1103-RGA, 2015 WL 4640400, at *4 (D. Del. Aug. 5, 2015); Novatel Wireless, Inc. v. Franklin Wireless Corp., No. 10CV2530-CAB (JMA), 2012 WL 12845615, at *3 (S.D. Cal. July 19, 2012). Accordingly, the Court finds Plaintiff has made a *prima facie* showing of induced infringement.

Second, the Court finds Plaintiff has made a *prima facie* showing of contributory infringement. Like induced infringement, the sale of the accused products in this district by third-party retailers in conjunction with Defendant's inclusion of its instructions that nearly parallel Plaintiff's method claims form a *prima facie* basis of direct infringement in the contributory infringement context. See Cascades Computer Innovation, LLC v. Samsung Elecs. Co., 77 F. Supp. 3d 756, 767 (N.D. Ill. 2015); see also Cugley v. Bundy Incubator Co., 93 F.2d 932, 935 (6th Cir. 1937) (holding that a corporation that sold device with instructions that patented method be employed in its use was guilty of contributory infringement). Moreover, Plaintiff's June 30, 2016 cease and desist letter to Defendant (ECF No. 13-3 at PageID 75), and evidence on March 6, 2017 that Defendant's third-party retailers continued selling the accused products at a Lowe's in this district (ECF No. 29-2 ¶ 6), suggest Defendant knew the accused products were patented and likely infringing.

19

Plaintiff has also sufficiently alleged the absence of any substantial non-infringing uses while Defendant has failed to present evidence to overcome that showing. Spansion, Inc. v. Int'l Trade Comm'n, 629 F.3d 1331, 1355 (Fed. Cir. 2010). The relevant inquiry for contributory infringement is not whether the products can be used only in a manner that infringes when the Defendant's instructions are followed, but "whether the accused products can be used for purposes other than infringement." In re Bill of Lading, 681 F.3d at 1337. But evidence of package instructions teaching an infringing method shifts the burden of production to the accused infringer "to introduce some evidence that end-users actually assembled [or use] the [accused devices] in a non-infringing way," Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1364 (Fed. Cir. 2006). In the instant case, Plaintiff has proffered evidence that Defendant sells the accused products with package instructions arguably teaching the '511 Patent method claims, but Defendant has failed to proffer any evidence that end-users use the accused products in a non-infringing way. Accordingly, the Court finds Plaintiff has made a *prima facie* showing of contributory infringement.[7] Having found Plaintiff sufficiently pled its claims, the Court DENIES Defendant's Motion to Dismiss for Failure to State a Claim on Plaintiff's indirect infringement claims. Moreover, because the Court finds Plaintiff made a *prima facie* showing of these claims to overcome Defendant's 12(b)(6) challenge, it addresses whether these claims arise from Defendant's contacts within the forum to overcome Defendant's 12(b)(2) personal jurisdiction challenge.

The Court therefore turns to the question of Defendant's contacts within this forum. The Court finds that because Defendant's purposeful availment of the Tennessee market—the

---

[7] "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses." Lucent Techs. v. Gateway, Inc., 580 F.3d 1301, 1320 (Fed. Cir. 2009) (internal citations and quotation marks omitted).

distribution of its products through established nationwide distribution channels that filtered into Tennessee—set in motion a series of events that form the basis of Plaintiff's indirect infringement claims, the Court has jurisdiction.  In other words, Defendant's use of a national stream of commerce led to direct infringement in Tennessee, which subsequently gave rise to the indirect infringement claims against it now.  For these reasons, the Court finds Plaintiff's indirect infringement claims arise from or relate to Defendant's purposefully availing conduct.

### C.    Reasonable and Fair

If the court finds the plaintiff has established the first two prongs of the specific jurisdiction inquiry, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985).  Five factors relevant in determining the reasonableness of personal jurisdiction are: "(1) the burden on the defendant, (2) the forum State's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies." Avocent, 552 F.3d at 1331 (citing Burger King, 471 U.S. at 477) (internal quotations omitted).

The burden on the defendant to meet this prong is high and in general such findings are limited to rare situations "where the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1568 (Fed. Cir. 1994); see e.g., ASM Assembly Sys.

<u>Switzerland GmbH v. QTS Eng'g, Inc.</u>, 2016 WL 278734, at *2 (S.D. Cal. Jan. 22, 2016)

(finding specific jurisdiction unreasonable and unfair because the defendant, a Massachusetts

corporation, had no connection to California, aside from a single appearance at an

international trade show, and the plaintiffs were foreign corporations with no contacts with

California).

      In the instant case, Defendant has not discussed its burden under the personal

jurisdiction inquiry.  In its motion to dismiss based on improper venue, however, Defendant

concedes that "[t]he financial hardships of litigating in either [Tennessee or Missouri] [are]

neutral . . . ."  (ECF No. 22-1 at PageID 120.)  Defendant does not address the remaining four

factors, but the Court finds each supports the exercise of specific jurisdiction in the instant

case.

      Under the second factor, Tennessee has an interest in discouraging the type of patent

infringement alleged by Plaintiff since Defendant intentionally placed the accused products

into a national distribution channel that filtered into Tennessee.  <u>See</u> <u>Akro Corp. v. Luker</u>, 45

F.3d 1541, 1549 (Fed. Cir. 1995) ("[t]he injury of which [the plaintiff] complains—restraint

of its production of goods by means of a non-infringed, invalid and/or unenforceable patent—

falls well within the boundaries of the sorts of injuries that Ohio has an interest in

discouraging.").

      The third and fourth factors also support exercise of specific jurisdiction in this case.

Plaintiff has a valid interest in seeking redress in the forum where it has its principal place of

business.  (<u>See</u> ECF No. 13 ¶ 1, 8.)  Moreover, adjudicating Plaintiff's claim where it

maintains its principal place of business provides for an appropriate and efficient forum.

Lastly, the fifth factor is neutral "[b]ecause patent infringement is a matter of federal law, the shared interest of the several States in furthering fundamental substantive social policies is not implicated."  <u>Patent Rights Prot. Group, LLC v. Video Gaming Techs.</u>, Inc., 603 F.3d 1364, 1371 (Fed. Cir. 2010).  Accordingly, Defendants have failed to meet the high burden of this prong.  For the reasons set forth above, the exercise of specific jurisdiction in this matter is fair and reasonable as it comports with the requirements of due process.

Accordingly, the Court DENIES the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and to Dismiss Plaintiff's Indirect and Willful Infringement Claims (ECF No. 24).  The Court specifically GRANTS Defendant's Motion to Dismiss Plaintiff's willful infringement claims; DENIES Defendant's Motion to Dismiss for lack of personal jurisdiction; and DENIES Defendant's Motion to Dismiss Plaintiff's indirect infringement claims.

**IT IS SO ORDERED**, this 26th day of July, 2017.

                                                       /s/ Jon P. McCalla
                                                  JON P. McCALLA
                                                   UNITED STATES DISTRICT COURT JUDGE